## Ball Trust (No. 2)

Before KLEIN, P. J., BOLGER, LEFEVER, SAYLOR, SHOYER and BURKE, JJ.

**528**

*Sporkin & Baran,* for petitioner.
*Paul Maloney* and *Alan G. Choate,* contra.

BOLGER, J., January 27, 1967.—L. G. Ball created an inter vivos trust on December 18, 1943. By its terms, inter alia, settlor's wife, Edith F. Ball, was to receive annually the greater of one half of the net income or $7,500 until her death or remarriage. C. M. Johnson and Fidelity-Philadelphia Trust Company are the present trustees.

On November 24, 1965, a citation was issued upon the petition of settlor to show cause why the deed of trust should not be reformed. In conjunction with the hearing held in this matter, the first account of the trustees was presented for audit on January 10, 1966. In his adjudication of April 23, 1966, the auditing judge dismissed the petition for reformation, confirmed the account nisi, and awarded one half of the income to June 16, 1964, the date of death of the life tenant, to her estate. No exceptions were taken to the action of the auditing judge in awarding part of the income to the estate of the deceased life tenant, although exceptions were taken with reference to the reformation portion of the case. These exceptions were subsequently dismissed, and that aspect of the case is currently on appeal before the Supreme Court.

The trustees refused to pay the award of income to the estate of the deceased life tenant because the sole beneficiary (with the exception of a $1,000 legacy) of that estate, L. G. Ball, settlor here, is indebted to the trustees under a contract of suretyship for a defaulted loan to Robert W. Ball, settlor's son, in the sum of $165,000. The loan from the corpus of this spendthrift trust was made pursuant to an agreement executed by settlor, his now deceased wife, his daughter and his three sons on the one hand, and by the current trustees on the other. In accordance with the terms

of that agreement, Robert W. Ball, the borrower, executed a judgment note, and L. G. Ball, Clifford H. Ball and Le Grande Ball, Jr. executed the contract of suretyship, whereby, inter alia, they guaranteed the repayment of the loan and gave the trustees the right, upon default by the borrower, to apply any funds belonging to them in possession of the trustees in satisfaction of the debt.

On November 10, 1966, Judge Saylor, the auditing judge, upon petition of L. G. Ball and Miami Beach First National Bank, the executors of the estate of the deceased life tenant, entered an order directing the trustees to pay the funds awarded to the above named executors by his adjudication of April 25, 1966.

On November 23, 1966, on petition of the trustees, a citation was granted directed to L. G. Ball and the Miami Beach First National Bank to show cause why the above mentioned order entered by the auditing judge should not be vacated. Respondents then filed preliminary objections to the petition of the trustees, and it is these preliminary objections which are before us.

The basis upon which the trustees rely in seeking vacation of the order to pay is that compliance with it will result in a circuity of action because the sole beneficiary of the solvent estate of the deceased life tenant is indebted to the trustees under the aforementioned agreement of suretyship, since Robert W. Ball has defaulted on the loan; that the income due the estate of the deceased life tenant is in reality the property of settlor and, hence, subject to the trustees' claim. Thus, the trustees are seeking to assert a lien on the share of income of the deceased life tenant by virtue of the suretyship agreement.

The preliminary objections are based on the following grounds: (1) The petition fails to set forth a basis to sustain the relief requested; (2) petitioner is

barred by laches; (3) petitioner waived its rights to assert the present claim; (4) petitioner is estopped; and (5) the court is without jurisdiction to grant the relief requested.

"Averments of fact in the pleading to which preliminary objections raising questions of law have been filed shall be deemed admitted for the purpose of the argument": Philadelphia Orphans' Court Rule *32.2 (d) (2). Taking all the averments of the petition as true, it is our view that petitioners are not entitled to the relief which they seek. Petitioners would ignore the fact that the funds in question do not belong to the person against whom they have a right of retention, but to the estate of the deceased life tenant. Avoidance of circuity is a desirable goal in many instances, but this is not such a case. A recent decision, Brose Estate, 423 Pa. 420 (1966), is enlightening with respect to the avoidance of circuity. There, an appeal was taken from the action of the lower court in ordering a personal representative to account for funds in the possession of decedent's widow. On a prior appeal to the Supreme Court, it had been found that the widow was required to pay some $20,000 to the executor. In proceedings subsequent to that appeal, the lower court entered the order complained of on the theory that there would be a circuity of action since the widow clearly was entitled to receive from the estate by virtue of her election to take against the will an amount greater than the sum she owed. The Supreme Court reversed and directed the widow to turn over the funds to the executor. It held that a personal representative should not be required to account for assets not in his possession or control. The court then stated: "Finally, and not least important, it would constitute an unwise precedent to permit an individual to retain possession of an asset of an estate when the personal representative is charged with the responsi-

bility of possessing and administering such asset, merely because that individual is, or may be, entitled to subsequently share in the distribution of the estate. The inherent dangers are self evident": Id. at 424.

The right of the trustees to retain under the suretyship contract whatever assets belonging to L. G. Ball, individually, which are in their hands cannot be denied. However, the funds in question do not belong to any of the parties to the suretyship contract, but to the estate of the deceased life tenant. The trustees are, or may become by exercising the power to confess judgment given them in the agreement, creditors of the primary distributee of that estate. If the Supreme Court will require a Pennsylvania claimant to turn over assets of a Pennsylvania estate in her hands to a Pennsylvania executor, even though she is certain to receive in distribution a greater amount, it is impossible to divine how this court can permit a Pennsylvania creditor of a distributee of a Florida estate to retain funds belonging to the Florida estate, when the validity of the claim of that creditor has not yet been established in any court. We must take as true the averment that L. G. Ball will eventually receive the funds as a distributee of the Florida estate. That fact does not in any way strengthen petitioners' position, since under Pennsylvania law and, presumably, under Florida law, the personal representative is charged with the responsibility of possessing and administering all assets of a decedent's estate.

We are mindful of the reluctance of orphans' courts to dispose of litigation on petition and preliminary objections thereto: Taylor Will, 423 Pa. 276 (1966); Schmitz Trust, 3 D. & C. 2d 185 (O. C. Phila. 1955). However, petitioners' case can never be stronger than it is now, and on its present footing, petitioners are not entitled to the relief they seek.

The court was informed at argument by counsel for

petitioners that they have started proceedings in the appropriate Florida court to enforce their rights under the suretyship contract with regard to the funds in question. It is apparent from this information, as well as from a cursory reading of the broad powers given to the trustees by the suretyship agreement, that they have several methods by which they can protect the principal of this trust and that the denial of the relief requested does not leave them without a remedy.

In arriving at our decision to dismiss the petition, we have not overlooked the fact that the order to pay was entered by the auditing judge after the writ of certiorari from the Supreme Court was filed with our clerk. The issuance of the order was then in the discretion of our colleague, and we are not convinced that his discretion was abused. See Saxton's Estate, 38 D. & C. 579 (1940), and Lafferty's Estate, 6 Dist. R. 421 (1897).

In view of the foregoing, it is unnecessary to discuss any of the issues raised by the other preliminary objections.

Therefore, respondents' first preliminary objection is sustained and the petition is dismissed.